# Exhibit 24

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

300 North LaSalle
Chicago, Illinois 60654

Russell E. Levine, P.C.
To Call Writer Directly:
(312) 862-2466
russell.levine@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

October 23, 2014

**Via E-mail**

Christopher Hayden, Esq.
Hayden Stone, PLLC
2212 Mt. Vernon Ave.
Suite 5
Alexandria, VA 22301

Re: Willowood USA

Dear Mr. Hayden:

This letter responds to your September 26, 2014 letter.

In your letter, you assert that you "have concluded that Willowood does not infringe any of" Syngenta's patents. We need to understand the bases for your conclusion since, as you recognize, some methods for producing the compound would infringe and some methods might not infringe.

So that you can disclose the bases for your conclusion to us with appropriate confidentiality protections, we've prepared and enclose a draft Confidentiality Agreement. Please let us know if you have any suggested edits to it. If not, please have it signed by Willowood and return it to us. We'll then have Syngenta countersign and will return to you a fully executed copy.

Very truly yours,

Russell E. Levine, P.C.

Enclosure

Beijing    Hong Kong    Houston    London    Los Angeles    Munich    New York    Palo Alto    San Francisco    Shanghai    Washington, D.C.

# CONFIDENTIALITY AGREEMENT

**THIS CONFIDENTIALITY AGREEMENT** (this "<u>Agreement</u>") is made as of the last date of signature set forth below by and between Syngenta Crop Protection, LLC, a corporation organized and existing under the Laws of the State of Delaware and having a place of business in Greensboro, NC ("<u>Syngenta</u>") and Willowood USA LLC, a limited liability company organized and existing under the Laws of the State of Delaware and a place of business in Roseburg, Oregon ("<u>Willowood</u>"). Syngenta and Willowood are herein sometimes referred to individually as a "<u>Party</u>" and collectively as "<u>Parties</u>".

**WHEREAS,** Syngenta, on January 30, 2014, sent a letter to Willowood, informing Willowood that it may be infringing one or more patents owned by Syngenta, including, but not limited to, U.S. Patent Nos. 5,602,076, 5,633,256, 5,760,250, 5,847,138, 7,084,272, 7,244,737, 8,124,761, 8,350,025, and 8,552,185 ("Syngenta Patents"), by manufacturing, using, importing, selling, or offering to sell azoxystrobin; and

**WHEREAS,** Willowood, on February 4, 2014, sent a letter to Syngenta, denying that it has infringed, or is infringing, any of the Syngenta Patents by manufacturing, using, importing, selling, or offering to sell azoxystrobin; and

**WHEREAS,** Syngenta, on August 25, 2014, sent a letter to Willowood requesting that Willowood send Syngenta manufacturing specifications for its imported azoxystrobin or explain in writing how its method of manufacture does not infringe any of the Syngenta Patents; and

**WHEREAS,** Willowood, on September 26, 2014, sent a letter to Syngenta stating that Willowood had reviewed the Syngenta Patents and concluded that it does not infringe any of the the Syngenta Patents; and

**WHEREAS,** the Parties wish to have further communications to determine whether Willowood's method of manufacture of azoxystrobin infringes any of the Syngenta Patents ("the Purpose"); and

**WHEREAS,** Willowood may disclose certain Protected Information (as defined below) to Syngenta in explaining its method of manufacturing azoxystrobin and its bases for asserting that it has not infringed, and does not infringe, any of the Syngenta Patents.

**NOW, THEREFORE,** in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Syngenta and Willowood hereby agree as follows.

1. **Protected Information.**

    1.1 <u>Defined Terms</u>.

    (a) The term "<u>Protected Information</u>" shall mean any confidential information that is not publicly known that Willowood relies on to support an explanation of why its method of manufacturing azoxystrobin does not infringe any of Syngenta's patents including, but not limited to, Willowood's manufacturing specifications for its imported azoxystrobin.

(b) The term "Receiving Party" shall mean Syngenta, or any persons associated with Syngenta, who receive Protected Information from Willowood under Section 2.2 hereof.

1.2 Exclusions. Protected Information shall not include information if, and to the extent, the Receiving Party can demonstrate such information:

(a) is or becomes known to the public other than by disclosure by the Receiving Party in violation of this Agreement;

(b) was known to Receiving Party before disclosure hereunder, without a duty of confidentiality;

(c) was independently developed by the Receiving Party outside of this Agreement and the Purpose and without reference to or use of any Protected Information; or

(d) was rightfully obtained by the Receiving Party from a third party without a duty of confidentiality.

**2. Disclosure, Use, and Ownership of Protected Information.**

2.1 Duty of Confidentiality. The Receiving Party shall hold all Protected Information disclosed by Willowood in confidence, using at least the same degree of care to prevent unauthorized disclosure or access that it uses with its own confidential information of similar type, and shall not disclose such Protected Information to others, allow others to access it, or use it in any way, commercially or otherwise, except in direct furtherance of the Purpose.

2.2 Access to Protected Information. Access to Protected Information provided by Willowood shall be restricted to the following:

(a) the following in-house counsel and personnel at Syngenta and their respective secretarial personnel: Kody Jones, Tom Hamilton, Kathryn Elliott, Joe Gaal, Robert Kettner, and Alan Whitton;

(b) outside counsel employed by Syngenta in connection with the Purpose and their respective associates, clerks, legal assistants, stenographic, and support personnel;

(c) independent experts retained by Syngenta as consultants to carry out the Purpose (collectively, "Consultants"); and

(c) third party contractors, including employees and agents thereof, involved solely in one or more aspects of organizing, filing, copying, coding, converting, sorting, or retrieving data or designing programs for handling data in connection with the Purpose;

provided that such recipients have a need to know such Protected Information in connection with the Purpose and are bound by obligations to maintain the confidentiality of such Protected Information as set forth in this Agreement.

2

2.3     Permitted Disclosure of Protected Information.  If the Receiving Party is requested to disclose all or any part of any Protected Information under a discovery request, a subpoena, or inquiry issued by a court of competent jurisdiction or by a judicial, administrative, regulatory, or governmental agency or legislative body or committee, the Receiving Party shall, to the extent practicable and subject to applicable laws, give prompt written notice of such request to Willowood and shall give Willowood the opportunity to seek an appropriate confidentiality agreement, protective order or modification of any disclosure or to otherwise intervene, prevent, delay or otherwise affect the response to such request, and the Receiving Party shall cooperate in such efforts. Further, if after reviewing any Protected Information disclosed under this Agreement the Receiving Party determines that Willowood has infringed, or is infringing, one more claims of the Syngenta Patents, the Receiving Party may rely on such Protected Information to initiate an action for patent infringement, provided that the Receiving Party takes appropriate measures to preserve the confidentiality of such Protected Information, including filing any such Protected Information under seal and cooperating with Willowood to establish a protective order governing the disclosure of such Protected Information.

2.4     Ownership; No Right or License.  All Protected Information that is disclosed by Willowood hereunder, or that a Receiving Party accesses hereunder, shall at all times be the property of Willowood, and Willowood shall own and retain all right, title and interest therein and thereto. Nothing in this Agreement shall be construed as conveying to the Receiving Party any right, title, or interest in or to any of Willowood's Protected Information, or to convey any license to use, sell, exploit, copy, or further develop any such Protected Information, except as expressly set forth in Section 2.1.

2.5     Admissibility.  The Parties agree that they shall not use this Agreement or the disclosure of any Protected Information under this Agreement to argue or allege that any information is admissible as evidence in any court proceeding or other dispute resolution proceeding except in connection with any action for breach of this Agreement.

2.6     No Admission or Waiver.  Nothing in this Agreement constitutes, or shall be alleged or argued to constitute, an admission or acknowledgement of liability. By executing this Agreement, neither Party waives any defense, argument, objection, or challenge that it may have in any court proceeding or other dispute resolution proceeding between the Parties, and nothing in this Agreement constitutes, or shall be alleged or argued to constitute, a waiver of any such defense, argument, objection, or challenge.

**3.     Term of Agreement.**

The Receiving Party's obligations herein with respect to Willowood's Protected Information shall survive and continue after the termination of any discussions or activities of the parties related to the Purpose, until the earlier of (a) the date that is fifteen (15) years after the last disclosure of any Protected Information hereunder, or (b) such time as the parties enter into a definitive agreement that expressly supersedes and replaces the confidentiality terms set forth herein. Notwithstanding the foregoing, the Receiving Party's obligations with respect to any specific Protected Information that constitutes a trade secret shall survive until the later of the time set forth in the preceding sentence and the time that such Protected Information no longer qualifies for protection as a trade secret under applicable law.

3

## 4. Remedies.

Each Party acknowledges and agrees that in the event of any breach of its obligations hereunder, the other Party shall be entitled to all remedies at law and in equity with respect to such breach. Each Party further acknowledges and agrees that in the event of a breach of its obligations hereunder, damages may not be an adequate remedy and the other Party shall be entitled to seek injunctive relief to restrain any such breach.

## 5. Miscellaneous.

5.1 <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties with respect to the confidentiality of information disclosed during discussions relating to the Purpose and supersedes all contemporaneous oral agreements and all prior oral and written quotations, communications, agreements, understandings of the parties, and written or oral representations of either party with respect to the confidentiality of information disclosed during such discussions. This Agreement shall not be amended or modified except by a written instrument executed by an authorized representative of each of Willowood and Syngenta.

5.2 <u>Severability</u>. If any provision of this Agreement shall be held or declared to be invalid or unenforceable, such invalid or unenforceable provision shall not affect any other provision of this Agreement, and the remainder of this Agreement, and each Receiving Party's obligations as a Receiving Party hereunder, shall continue in full force and effect as though such provision had not been contained in this Agreement and, if permitted under applicable rules of instruction and interpretation, such provision shall be reformed to the extent necessary to render such provision valid and enforceable and to reflect the intent of the Parties to the maximum extent possible under applicable law.

5.3 <u>Governing Law and Venue</u>. This Agreement is to be governed by and construed in accordance with the laws of the State of Delaware, excluding that body of law pertaining to conflict of laws. Any action or proceeding arising out of or relating to this Agreement shall be brought in state or federal courts within Delaware, and the parties agree to the exclusive jurisdiction of, and venue in, such courts for such purposes and each party hereby waives any claim or defense that such forum in such courts is not convenient or proper.

5.4 <u>Assignment</u>. This Agreement shall be binding on the parties and their respective successors and permitted assigns. Neither Party may assign this Agreement without the prior written consent of the other Party; provided that each Party may assign this Agreement to its respective affiliates or in connection with a sale of all or substantially all of the business of such Party to which this Agreement relates (whether by way of merger, sale of assets or stock, or otherwise). Any attempted assignment or delegation in violation of the foregoing will be void and of no effect.

\* \* \* \* \*

[Signature page follows]

4

IN WITNESS WHEREOF, Willowood and Syngenta, by their respective authorized representatives set forth below, have signed this Agreement as of the last date set forth below.

Willowood USA, LLC

By:_____

Name:_____

Title:_____

Date:_____

Syngenta Crop Protection, LLC

By:_____

Name:_____

Title:_____

Date:_____