IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SYNGENTA CROP PROTECTION, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>WILLOWOOD, LLC, WILLOWOOD USA, LLC, WILLOWOOD AZOXYSTROBIN, LLC, and WILLOWOOD LIMITED,<br><br>    Defendants. | Civil Action No: 1:15-CV-274 |

# DEFENDANT WILLOWOOD LIMITED'S BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT

## I.    NATURE OF MATTER BEFORE THE COURT

This brief is submitted on behalf of Defendant Willowood Limited in support of its motion to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Willowood Limited is a Chinese company. It has not conducted any business in and has had no contacts with the State of North Carolina (or any other state). Consequently, the exercise of personal jurisdiction over Willowood Limited would violate the Fourteenth Amendment's due process requirements.

## II.    STATEMENT OF FACTS

The Plaintiff, Syngenta Crop Protection, LLC ("Syngenta"), initiated this action against four Defendants – Willowood USA, LLC ("Willowood USA"), Willowood

Azoxystrobin, LLC ("Willowood Azoxystrobin"), Willowood, LLC ("Willowood"), and Willowood Limited – alleging patent infringement, copyright infringement, and unfair competition in connection with the manufacture, sale, and distribution of the chemical fungicide known as azoxystrobin.  Syngenta invented azoxystrobin in the mid-1980s and, beginning in 1986, filed a series of patent applications on azoxystrobin and related compounds.  In 1991, Syngenta filed a patent application for a particular method of making azoxystrobin.  (Compl. ¶¶ 21-25, Dkt. No. 1.)  In 1997, the two patents in this case that are directed to the azoxystrobin compound were issued to Syngenta.  (*Id.*)  Also in 1997, Syngenta registered azoxystrobin with the U.S. Environmental Protection Agency (the "EPA") pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act, 6 U.S.C. §§ 136 *et seq.* ("FIFRA").[1]  (Compl. ¶ 26, Dkt. No. 1.)  In 1998, a third of the four patents in this case (the method of making Azoxystrobin) was issued to Syngenta.  In 2006, Syngenta filed a new patent application on a method for making Azoxystrobin, and that patent issued in 2012.  In short, Syngenta has effectively enjoyed a monopoly on azoxystrobin for nearly 30 years.

Beginning last year, Syngenta's patents on azoxystrobin began to expire.  The two azoxystrobin compound patents at issue in this case both expired on February 11, 2014.  The third patent at issue – the method patent that issued in 1998 – expires less than six

---

[1]  FIFRA provides a comprehensive scheme for regulating pesticide products in the United States.  A pesticide product may not be manufactured or sold in the U.S. without first obtaining a registration approval from the EPA.  *See, e.g.*, 7 U.S.C. § 136a (a).

months from now – December 8, 2015. The fourth patent – the method patent that issued in 2012 – does not expire until 2026.

Since the patents covering the azoxystrobin compound have expired, and there are a number of different ways to make azoxystrobin, including the method described in the original azoxystrobin patent, several generic pesticide companies began registering generic versions of Syngenta's products with the EPA, in accordance with the statute. (Compl. ¶¶ 36-37, Dkt. No. 1.) Specifically, under FIFRA, once the patent(s) on a registered pesticide expire(s), EPA can approve registrations of generic forms of the product (also known as "follow-on" or "me-too" registrations), provided that the follow-on is "identical or substantially similar" to the original product or differs only in ways that would not significantly increase the risk of unreasonable adverse effects to human health and the environment. *See* 7 U.S.C. § 136a(c)(7)(A). The label accompanying the pesticide is an integral part of the federally approved registration and is the primary means by which EPA establishes and enforces the terms of the registration and regulates the use of the pesticide. Moreover, the follow-on's proposed label is the primary means by which EPA determines that the follow-on product meets the standards of § 136a(c)(7)(A). The EPA carefully scrutinizes the label to ensure that it is identical or substantially similar to the original product label or differs only in ways that would not significantly increase the risk of unreasonable adverse effects. Indeed, the Agency prescribes the exact format and wording of large portions of the label's contents. *See* 40 C.F.R. § 152.113.

Willowood USA is a generic pesticide company and an Oregon limited liability company. Through its wholly owned subsidiary Willowood, LLC (also an Oregon entity), Willowood USA sells generic pesticide products[2] after they have come off patent in the United States. (Declaration of Brian D. Heinze ("Heinze Decl.") ¶ 4.) As Syngenta's patents on the azoxystrobin compound neared expiration, Willowood, LLC filed an application for follow-on products Azoxy 2SC and AzoxyProp with the EPA, as permitted by FIFRA. (Compl. ¶¶ 36-37, Dkt. No. 1.) The EPA approved the registrations for Azoxy 2SC and AzoxyProp, including their accompanying product labels, and Willowood USA began importing azoxystrobin in June, 2014, after the two azoxystrobin compound patents expired. (Heinze Decl. ¶¶ 5, 8.)

In order to make Azoxy 2SC and AzoxyProp, Willowood USA buys azoxystrobin in China and imports it into the U.S. for formulation into the final product. Willowood USA purchases all of its azoxystrobin from Willowood Limited, a Chinese pesticide broker based located in Hong Kong, and the terms of sale are FOB Shanghai, China. (Heinze Decl. ¶ 8.) Once the azoxystrobin arrives in the U.S., Willowood USA ships it to St. Louis, where it is formulated into Azoxy 2SC and AzoxyProp by a third-party contractor, AgraForm. (*Id.*) The Defendants Willowood USA and Willowood, LLC then market and sell Azoxy 2SC and AzoxyProp in the United States. (Heinze Decl. ¶ 10.)

---

[2] The term "pesticides" is used to refer broadly to pesticides, fungicides, and all other products regulated under FIFRA.

Willowood Limited is a Chinese company with its principal place of business in Hong Kong, China. It does not do business anywhere within the United States, including the State of North Carolina. It does not maintain any bank accounts and has no offices and has no employees anywhere in the United States. It does not lease or own any real property or hold any assets in this country. It is not registered to do business in North Carolina and has no registered agent for service of process in North Carolina (or anywhere else in the United States). Willowood Limited does not pay taxes in North Carolina or any other U.S. jurisdiction. (*See* accompanying Declaration of Vijay Mundhra ("Mundhra Decl.") ¶ 3.)

Willowood USA and Willowood Limited are separate and distinct entities, and there is no principal/agent relationship between the two companies. Neither entity is involved in or controls the day-to-day operations of the other. The two companies have separate bank accounts, assets, and offices. (*See* Mundhra Decl. ¶¶ 3, 4; Heinze Decl. ¶ 9.) Willowood USA is operated by Brian Heinze. (Heinze Decl. ¶ 2.) Vijay Mundhra is the majority owner of Willowood Limited; he lives in Hong Kong and manages Willowood Limited's operations there. (Mundhra Decl. ¶ 2.) Mr. Mundhra also owns 51% of Willowood USA, but he is not involved in the day to day operations of that company. (Heinze Decl. ¶ 2; Mundhra Decl. ¶ 4.) The two other Defendants in this case, Willowood Azoxystrobin, LLC and Willowood, LLC, are each Oregon entities that are also wholly owned subsidiaries of Willowood USA; hence they are also separate entities from Willowood Limited. (Heinze Decl. ¶ 3.)

### III. QUESTION PRESENTED

Whether the Court should dismiss the Complaint as to Willowood Limited pursuant to Rule 12(b)(2) for lack of personal jurisdiction on the grounds that said Defendant has conducted no business in the State of North Carolina and has no contacts, let alone substantial, continuous, or systematic business contacts, with this State.

### IV. ARGUMENT

#### A. Plaintiff Must Establish (and Cannot Establish) the Existence of Jurisdiction by a Preponderance of the Evidence

When a court's exercise of personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff must prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Vision Motor Cars, Inc. v. Valor Motor Company*, 981 F. Supp. 2d 464, 468 (citing, *inter alia*, *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Even when a court examines personal jurisdiction solely on the basis of motion papers, supporting legal memoranda, and the relevant allegations of a complaint, the plaintiff still must make a *prima facie* showing of personal jurisdiction. *Vision Motor Cars*, 981 F. Supp. 2d at 484 (quoting *Combs*, 886 F.2d at 676). When the defendant provides evidence that denies facts essential for jurisdiction, the plaintiff "must present sufficient evidence to create a factual dispute on each jurisdictional element that has been denied by the defendant and on which the defendant has presented evidence." *Design Resources, Inc. v. Leather Industries of America*, 900 F. Supp. 2d 622 (M.D.N.C. 2012) (quoting *Vogel v. Wolters Kluwer Health, Inc.*, 630 F. Supp. 2d 585, 594 (M.D.N.C. 2008)). Further, the Court need not "credit conclusory allegations or draw farfetched inferences." *Id.*

6

(quoting *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320 (table) (4th Cir. 2000)). Plaintiff must base its claim for personal jurisdiction "on specific facts set forth in the record." *Id*. (quoting *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306 (D.S.C. 1992).

In this case, as demonstrated below, the facts cannot and do not support the exercise of personal jurisdiction over Willowood Limited.

**B. The Exercise of Personal Jurisdiction Over Willowood Limited Would Not Comport With the Due Process Clause**

A district court has personal jurisdiction over a non-resident defendant only when two conditions are satisfied: "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with the Fourteenth Amendment due process requirements."[3] *Christian Science Board of Directors v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

Although North Carolina's long-arm statute (N.C. Gen. Stat. § 1-75.4) provides no fewer than *twelve* bases for asserting personal jurisdiction over foreign defendants, Syngenta's Complaint does not cite any specific statutory provision to support the

---

[3] Although these two standards often merge, *see Christian Science Board of Directors v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001), "if jurisdiction is not authorized under the North Carolina Long Arm Statute, the court need not engage in additional due process analysis," *Design Resources, Inc*., 900 F. Supp. 2d at 630 (quoting *Moseley v. Fillmore Co*., 725 F. Supp. 2d 549, 560 (W.D.N.C. 2010)). *See also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 n.4 (4th Cir. 2009) (noting that a defendant's contacts could fulfill the dictates of due process yet escape the literal grasp of the long arm statute). Defendant reserves its right to address the Long-Arm Statute if and when Plaintiff identifies any specific provisions of that statute to support jurisdiction.

7

assertion of jurisdiction over Willowood Limited.[4]  In any event, the Due Process Clause of the Fourteenth Amendment prohibits the exercise of personal jurisdiction over Willowood Limited. The Due Process Clause requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  The Supreme Court has reasoned that, if a non-resident has purposefully availed himself of the privilege of conducting business in a particular state, such that his activities are shielded by the benefits and protections of that state's laws, then "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985).  Jurisdiction is therefore proper where the contacts result from actions by the defendant himself that create a "substantial connection" with the forum state.  *Id*. at 475.  Conversely, jurisdiction is not proper when defendant has no contacts with the forum state, or where defendant's contacts with the forum state are no more than "random," "fortuitous," or "attenuated." *Id*. at 475.

---

[4]  The Complaint alleges generally that all Defendants "have committed acts of copyright and patent infringement in this judicial district, have systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail themselves of the benefits of this judicial district." (Compl. ¶ 9, Dkt. No. 1).  These conclusory allegations are insufficient to establish personal jurisdiction.  *See Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009) (stating that "legal conclusions" and "bare assertions" should be disregarded for purposes of a motion to dismiss).   That is especially the case when, as here, the defendant presents uncontestable facts that disprove each component of jurisdictional criteria.

8

The "minimum contacts" necessary to establish personal jurisdiction vary depending on whether the asserted jurisdiction is general or specific. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003); *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S. Ct. 1868, 1880 (1984). However, whether general or specific, the Fourth Circuit has emphasized that a defendant's contacts with the forum state must be tantamount to physical presence in the state to satisfy due process. *See ESAB Group, Inc., v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997) ("The question, then, is whether a defendant's contacts with the forum state are so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just, notwithstanding the lack of physical presence in the state.").

In this case, Syngenta has not alleged either specific or general jurisdiction over Willowood Limited, and for good reason: neither specific nor general jurisdiction can be asserted over Willowood Limited consistent with the Fourteenth Amendment's due process requirements.

### 1. The Court Lacks Specific Jurisdiction Over Willowood Limited

To establish specific jurisdiction, a court must find that: (1) a defendant has purposefully availed itself of the privilege of conducting activities in the State; (2) the action arises out of those activities directed at the state; and (3) exercise of jurisdiction would be constitutionally reasonable. *ALS Scan*, 293 F. 3d at 712. *Accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-75 (1985). None of these criteria are met in this case as to Willowood Limited.

9

### a. Willowood Limited Has Not Purposefully Availed Itself of the Privileges of Conducting Business in North Carolina

To satisfy the purposeful availment prong, a plaintiff must demonstrate that the defendant had "a 'substantial connection' with the forum State," such that it "should reasonably anticipate being haled into court there." *Burger King Corp.*, 471 U.S. at 474-75 (1985). Contacts with a forum state that are "random," "fortuitous," or "attenuated" do not suffice for this purpose; the Constitution requires that a defendant purposely established minimum contacts in the forum state and *intentionally* directed its conduct toward that state. *Id.* at 474-75. Here, Willowood Limited has taken no action in the United States, much less North Carolina, to justify the exercise of personal jurisdiction. Willowood Limited has no connections – let alone a substantial connection – with North Carolina, and it surely has no reason to have anticipated that it would be haled into court here (or anywhere in the U.S.).

The Fourth Circuit has enumerated several factors that inform the analysis of whether a business has purposefully availed itself of a forum state's jurisdiction:

- Whether defendant owns property in the forum state;
- Whether defendant reached into the forum state to solicit or initiate business;
- Whether defendant deliberately engaged in significant or long-term business activities in the forum state;
- Whether the parties contractually agreed that the law of the forum state should govern disputes;
- Whether defendant made in-person contact with the resident in the forum state regarding the business relationship;

10

- The nature, quality and extent of the parties' communications about the business being transacted; and
- Whether the performance of contractual duties was to occur within the forum.

*See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

None of these criteria are satisfied in this case. Willowood Limited does not own property in North Carolina (or any state). It did not reach into North Carolina (or any state) to initiate or solicit business. It has not deliberately engaged in any business activity, let alone "significant" or "long-term" business, in North Carolina (or any state). There is no contract between the parties of any type, let alone an agreement concerning choice of law; no in-person business contacts by Willowood Limited within North Carolina; no performance of any contractual duties to occur within North Carolina; and no communications between the parties about North Carolina. (*See* Mundhra Decl. ¶ 3.)

When, as here, the "purposeful availment" prong of the specific jurisdiction test cannot be met, the Court must dismiss the Complaint on that basis alone and need not consider the second and third prongs of the due process analysis. *Consulting Eng'rs Corp.*, 561 F.3d at 278; *Vision Motor Cars*, 981 F. Supp. 2d at 474. As discussed next, however, the remaining prongs of the analysis also are not met.

### b. This Lawsuit Does Not Arise Out of Any Activity Conducted by Willowood Limited in North Carolina

By definition, since Willowood Limited has not purposely directed any activity towards North Carolina, this lawsuit does not and cannot arise out of any such activity, and hence the second component of the specific jurisdiction test cannot be met.

11

### c. The Exercise of Personal Jurisdiction Over Willowood Limited Would Be Constitutionally Unreasonable

In making this determination under the specific jurisdiction analysis, courts consider the following factors: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the Plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantial social policies. *Vision Motor Cars*, 981 F. Supp. 2d at 474.

These considerations weigh heavily against asserting personal jurisdiction over Willowood Limited.

### i. Burden on the Defendant

The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co, Ltd. v. Superior Court*, 480 U.S. 102, 114 (1997). The Court explained:

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the Federal Government's interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.

*Id*. at 115.

12

As a Chinese company, Willowood Limited would suffer hardship if it were forced to defend this action here. *See Young v. FDIC*, 103 F. 3d 1180, 1191 (4th Cir. 1997) (noting that substantial travel can constitute an undue burden). Substantial burden cannot be justified by mere convenience to Plaintiff. *See Magic Toyota, Inc.*, 784 F. Supp. at 312. Even when a defendant has the necessary minimum contacts with the forum jurisdiction to satisfy the "purposeful availment" prong (which is not the case here), it is not constitutionally reasonable to ask the defendant to travel thousands of miles to defend an action based on such limited contacts. *Casualty Assurance Risk Ins. Brokerage Co. v. Dillon*, 976 F.2d 596, 600 (9th Cir. 1992); *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1029 (2d Cir. 1997) (finding that an Israeli newspaper would shoulder a "significant burden" if forced to defend itself in Massachusetts, where the paper had "no meaningful presence"). Similarly, it would be unreasonable to ask Willowood Limited to travel over 8,000 miles to a forum where it has no "meaningful presence," to defend a lawsuit that is based centrally on the alleged actions in North Carolina of wholly separate companies.

### ii. Interest of the Forum State

The dismissal of Willowood Limited would not adversely affect any interest that North Carolina may have in adjudicating this matter. The Court plainly would retain personal jurisdiction over all of the remaining Defendants, who are alleged to have marketed, distributed, and sold the infringing products in North Carolina – activities in

13

which Willowood Limited was not involved.  Thus, the Court can fully adjudicate the issues presented absent Willowood Limited as a party.

### iii.  Plaintiff's Interest in Obtaining Relief

For the same reasons noted above, the Plaintiff's interest in obtaining effective relief likewise would not be significantly affected if Willowood Limited were dismissed from this action.  The parties who actually are engaged in the alleged infringing actions would remain parties to the case and remain subject to any and all appropriate relief to which Plaintiff might be entitled.

### iv.  Interest of Interstate Judicial System and the Shared Interest of the Several States

The last two factors likewise do not counsel against dismissal of Willowood Limited.  Neither the interstate judicial system's interest in efficient resolution of disputes nor the states' shared interests in addressing issues of important social policy would be adversely affected by the dismissal of Willowood Limited as a party – this Court can finally adjudicate all of the issues presented in the Complaint, and Plaintiff can obtain full redress, against the remaining defendants.

For the foregoing reasons, the Court lacks specific jurisdiction over Willowood Limited.

### 2.  The Court Also Lacks General Jurisdiction Over Willowood Limited

General jurisdiction cannot be exercised over Willowood Limited because it does not have "continuous and systematic contacts with the forum state [that] render it essentially home."  *Vision Motor Cars, Inc. v. Valor Motor Company*, No. 1:13-CV-

14

00317, slip op. (M.D.N.C. August 19, 2013) (quoting *International Shoe v. Washington*, 326 U.S. 310, 317 (1945)). The "continuous and systematic" contacts test that applies to general jurisdiction is "a more demanding standard than is necessary for establishing specific jurisdiction." *ALS Scan*, 293 F.3d at 712; *Sloane v. Laliberte*, 2011 WL 2938117, at \*6 (M.D.N.C. July 19, 2011). To establish general jurisdiction, a defendant's contacts with the forum state must be *more* persistent than what is necessary to establish specific jurisdiction. *ALS Scan*, 293 F.3d at 712. Clearly, Syngenta cannot establish general jurisdiction with respect to Willowood Limited.

Attenuated connections that do not rise to the level of "continuous and systematic general business contacts" are insufficient. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2857 (2011). Even a small number of sales to customers within the forum state are inadequate to impose general jurisdiction over a non-resident defendant. *Baker v. Patterson Med. Supply, Inc.*, No. 4:11cv37, slip op. at 7 (E.D. Va. Nov. 17, 2011). Willowood Limited has not sold *any* goods and has *no* customers in North Carolina. It is not incorporated or registered to do business in North Carolina, it does not pay taxes in the state, and it has no offices or property in the forum. (Mundra Decl. ¶ 3.) Willowood Limited does not have any employees or agents in North Carolina. (Mundra Decl. ¶ 3.)

15

Willowood Limited does not have *any* contacts with North Carolina much less "attenuated," "systematic," or "continuous" contacts there.[5] There is, in short, no basis for this Court to exercise general jurisdiction over Willowood Limited.

### C. The Alleged Actions of Other Defendants Cannot Confer Personal Jurisdiction On Willowood Limited

The focus under a minimum contacts analysis must be the individual defendant's contacts with the forum state and not "the unilateral acts of some other person or entity." *Burger King Corp.,* 471 U.S. at 474-75; *Sloane v. Laliberte*, 2011 WL 2938117, at *6 (M.D.N.C. July 19, 2011); *Helicopteros Naclonales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (recognizing that the "unilateral activity of another party or third person" cannot satisfy minimum contacts requirements of due process). Neither the activities of Willowood USA in shipping azoxystrobin to the United States and manufacturing Azoxy 2SC and Azoxy Prop in the U.S., nor the activities of Willowood, LLC in marketing those products in this country, can confer personal jurisdiction over Willowood Limited. The only intentional act committed by Willowood Limited was selling the chemical

---

[5] Willowood Limited's website (*see* Compl. ¶ 5, Dkt. No. 1) is insufficient to establish *in personam* jurisdiction. Plaintiff must show there was a manifest intent to target North Carolina. *ALS Scan*, 293 F.3d at 714. In *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002), the Fourth Circuit found Defendant did not manifest intent to target residents of Virginia when the website included articles discussing conditions at a Virginia prison, and even defamed the warden by name. Unlike *Young*, Willowood Limited's website never mentions North Carolina. For that matter, the website does not even show a particular focus on the United States. The website merely identifies the United States as one of more than 50 countries where Willowood Limited's products are sold. The website plainly does not manifest an intent to target North Carolina.

16

compound to Willowood USA in *China*. Once it sells the product to Willowood USA, Willowood Limited has no involvement with, and no control over, where Willowood USA sends azoxystrobin or where the end products are manufactured and sold. (Heinze Decl. ¶ 10; Mundhra Decl. ¶ 7.) Further, Willowood Limited had no control over Willowood LLC's applications to the EPA for end use registrations. (Heinze Decl. ¶ 5; Mundhra Decl. ¶ 5.) The Plaintiff's claims do not **arise out of** Willowood Limited's sale of azoxystrobin to Willowood USA in China, and Willowood Limited has no involvement or control over the product once it leaves the port in China; therefore the exercise of personal jurisdiction over Willowood Limited is improper.

The mere fact that Willowood Limited and Willowood USA are affiliates is not enough for the Court to assert personal jurisdiction over Willowood Limited. The Fourth Circuit has routinely refused to extend jurisdiction over a *parent* company, even if the subsidiary has done business in the forum state, when the corporate functions are separate and the parent does not control operating policies of the subsidiary. *See Myland Laboratories, Inc. v. Akzo*, N.V., 2 F.3d 56, 62-63 (4th Cir. 1993) (district court did not have personal jurisdiction over foreign parent corporation even though parent's subsidiary conducted business in Maryland, when there were no common officers or directors, corporate functions were separate, and parent did not exert control over management even through it indirectly owned 100% of subsidiary's stock); *Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639 (D.S.C. 2005).

Here, there is not even a parent-subsidiary relationship between Willowood Limited and Willowood USA; they are completely separate entities. (Heinze Decl. ¶ 9; Mundhra Decl. ¶ 4.) Neither entity participates in or controls the other's day-to-day activities nor is there any agency relationship between the two entities. (Heinze Decl. ¶ 9; Mundhra Decl. ¶ 4.) Therefore, the alleged presence of Willowood USA or any of *its* subsidiaries (such as Willowood Limited) in North Carolina cannot properly be attributed to Willowood Limited for purposes of determining personal jurisdiction.[6]

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the Complaint in its entirety as against the Defendant, Willowood Limited, for lack of personal jurisdiction. This, the 16th of June 2015.

---

[6] In the event Syngenta requests an opportunity to conduct discovery on the jurisdictional issue, the Court should deny that request because Plaintiff has presented only speculative, conclusory and demonstrably incorrect allegations concerning Willowood Limited's contacts with the forum state. *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983).

This the 16th day of June, 2015.

/s/ Alan W. Duncan
Alan W. Duncan
N.C. State Bar No. 8736
L. Cooper Harrell
N.C. State Bar No. 27875
VAN LANINGHAM DUNCAN PLLC
300 N. Greene Street, Suite 850
Greensboro, NC 27401
Telephone: 336-645-3320
Facsimile: 336-645-3330
aduncan@vldlitigation.com
charrell@vldlitigation.com

*Counsel for Defendants*

OF COUNSEL:

Peter J. Davis
WHITEFORD TAYLOR PRESTON LLP
7 Saint Paul Street
Baltimore, MD 21202
Telephone: 410.347.8738
Facsimile: 410.223.4304
pdavis@wtplaw.com

Barry S. Neuman
WHITEFORD TAYLOR PRESTON LLP
1025 Connecticut Ave., NW, Suite 400
Washington, DC 20036
Telephone: 202.659.6761
Facsimile: 202.327.6151
bneuman@wtplaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document has been filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record in this action.

This the 16th day of June, 2015.

/s/ Alan W. Duncan
Alan W. Duncan
