IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SYNGENTA CROP PROTECTION, LLC, | ) )  ) |
| Plaintiff, | ) ) |
| v. | )   1:15-CV-274 ) |
| WILLOWOOD, LLC, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Syngenta Crop Protection, LLC, has sued four business entities alleging patent infringement, copyright infringement, and unfair and deceptive trade practices. Syngenta's claims relate to the defendants' roles in the registration and sale of fungicide products that include the chemical azoxystrobin. Defendant Willowood Limited is a Chinese corporation whose only presence in the United States is through its sales of azoxystrobin to a United States affiliate. Willowood Limited asserts that the Court lacks personal jurisdiction and has brought a motion to dismiss. Because it established an affiliate specifically to market and sell products to customers in the United States and sold the allegedly infringing chemical to that affiliate for sale in the United States, Willowood Limited has sufficient connections to the United States for the exercise of jurisdiction to be fair and just. The Court will deny the motion.

## STANDARD

When a defendant challenges personal jurisdiction by Rule 12(b)(2) motion, "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). All jurisdictional allegations are taken in the light most favorable to the plaintiff, and all inferences must be in favor of jurisdiction. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (citation omitted). If there is no evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396 (citation omitted).

Although the standard may be lenient, a court "need not credit conclusory allegations or draw farfetched inferences." *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (per curiam) (internal quotation omitted). Blanket conclusory allegations as to multiple defendants are insufficient. *Cf. Sterne v. Thompson,* No. 1:05 CV 477 JCC, 2005 WL 2563179, at *2 (E.D. Va. Oct. 7, 2005) (addressing Rule 12(b)(6) motion). The plaintiff must base its claim for personal jurisdiction "on specific facts set forth in the record." *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). Further, a parent-subsidiary relationship does not by itself support jurisdiction. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005).

The allegations of the complaint are taken as true only if evidence from the defendant does not contradict them. *See Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d

904, 908 (4th Cir. 1984). Once the defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come forward with affidavits or other evidence in support of its position. *Clark v. Remark*, No. 92-1682, 1993 WL 134616, at *2 (4th Cir. Apr. 29, 1993) (per curiam). Where both sides present evidence, a court resolves factual conflicts in favor of the party asserting jurisdiction. *Id.*

## FACTS[1]

The movant, Willowood Limited ("W-Limited"), is a Chinese entity with its principal office in Hong Kong. (Doc. 15 at ¶ 3.) It buys and sells pesticides, including azoxystrobin, outside the United States. (*Id.* at ¶¶ 3, 5.) W-Limited maintains its records in China and does not have any assets, bank accounts, offices, agents, or employees in the United States. (*Id.* at ¶ 3.) Its website is available worldwide, but "it does not target any specific customer or location in North Carolina or anywhere else in the United States." (*Id.*) It is not registered to do business anywhere in the United States. (*Id.*)

The other defendants are limited liability companies registered and based in Oregon. (Doc. 16 at ¶ 3.) The defendant Willowood USA, LLC ("W-USA") is the parent company, while the defendants Willowood, LLC, and Willowood Azoxystrobin, LLC are W-USA's wholly owned subsidiaries. (*Id.*)

W-Limited formed W-USA to expand into the United States market and knew that

---

[1] The Court applies the standard set forth *supra* and states its findings of fact based on the allegations in the complaint and the evidence submitted, drawing all inferences in favor of the plaintiff and in favor of jurisdiction, and disregarding all allegations disputed by the defendant's evidence and unsupported by the plaintiff's evidence.

the azoxystrobin it sold W-USA would end up in products sold in the United States.[2]  W-Limited announced the formation of W-USA in a 2010 press release on W-USA's website.  (Doc. 22-3 at 5.)  It stated that the new company "will operate as a wholly owned subsidiary of Willowwood [sic] Limited of Hong Kong, China" and that it is "very excited about this new opportunity to expand and grow our company in the United States."  (*Id.*)  This press release was available on W-USA's website until Syngenta cited it in an opposition brief to this motion, after which W-USA removed the "wholly owned subsidiary" language.[3]  (Doc. 26 at ¶ 2 & p. 5.)  W-Limited is the sole supplier of azoxystrobin to W-USA.  (Doc. 16 at ¶ 8.)

The websites of W-USA and W-Limited frequently refer to W-USA as an affiliate of W-Limited.  W-Limited's website describes W-USA as an "affiliate" or an "affiliate office," provides the address and phone number to W-USA's office, and includes a link to W-USA's website.  (Docs. 22-2, 22-8, 22-9.)  A news update on the W-Limited

---

[2] In addition to the evidence detailed *infra*, W-Limited's own evidence implicitly confirms its awareness that the azoxystrobin sold to W-USA would be imported and sold in the United States generally.  Vijay Mundhra, a Hong Kong resident, is the founder and majority owner of W-Limited and manages its operations.  (Doc. 15 at ¶ 2.)  Mr. Mundhra declared based on his own knowledge that W-USA's decisions regarding azoxystrobin are made by "managers of Willowood USA who know and understand **the United States market**."  (Doc. 27 at ¶ 4, emphasis added.)  He stated that W-Limited employees have no "specific knowledge concerning . . . **where in the United States** (or anywhere else) that product will be sold or distributed" and that he has "no knowledge of where azoxystrobin is **sold or used in the United States**."  (*Id.* at ¶ 5, emphasis added.)

[3] W-Limited now says W-USA is not a wholly owned subsidiary and has offered declarations in support.  (Doc. 15 at ¶ 4; Doc. 27 at ¶ 2; Doc. 16 at ¶ 9.)  Where both sides have submitted evidence, and that evidence conflicts, we must take the plaintiff's version as true.  *See Clark*, 1993 WL 134616, at *2.  For purposes of this order, W-USA is the subsidiary of W-Limited.  As noted *infra* p. 14 note 8, this is not determinative.

website announcing the launch of W-USA states that "Willowood Limited, launches its US business (Willowood USA LLC.) based out of Oregon, USA, please contact us . . . for more information and business opportunities in the US." (Doc. 22-1.) W-USA's website shows similar connections. It describes W-Limited's business and contains a link to W-Limited's website. (Doc. 22-10.) W-USA's website also has a page called "Meet the Team" that prominently displays a picture and biography of Vijay Mundhra, founder, majority owner, and manager of W-Limited. (Doc. 22-11 at 2.)

W-USA buys azoxystrobin from W-Limited in China and then imports it into the United States, where it is processed in St. Louis, Missouri, for sale in the form of fungicide products.[4] (Doc. 16 at ¶ 8.) W-USA has sold products containing azoxystrobin throughout the United States, including in North Carolina. (Doc. 26 at ¶ 4; *see* Docs. 22-4 to 22-7.) W-Limited was not involved in either the processing or the sales of these fungicide products by W-USA.[5]

W-Limited does not hold any registrations from the EPA for sale of azoxystrobin in the United States and is not involved in registering any of W-USA's products in the United States. (Doc. 15 at ¶ 5.) The documents attached to the complaint show that Willowood, LLC, a subsidiary of W-USA, filed applications for registration with the

---

[4] Syngenta alleges that some Willowood entity possessed azoxystrobin in the United States in 2013, (Doc. 1 at ¶¶ 51-55, *see* Docs. 1-18, 1-19), while Mr. Mundhra states that the sales to W-USA began in June 2014. (Doc. 15 at ¶ 6.)

[5] W-Limited has offered evidence that it has no role in W-USA's operations or decisions after sale of the azoxystrobin, (*see* Doc. 27 at ¶ 4), and Syngenta has offered no evidence to the contrary.

5

EPA, (*see* Docs. 1-16 to 1-18; Doc. 1-1), and registered the azoxystrobin products with the North Carolina Department of Agriculture. (*See* Doc. 1-2 at 2-3.)

**DISCUSSION**

**Federal Circuit law applies.** The parties agree that the law of the Federal Circuit applies to personal jurisdiction in connection with the patent claims.[6] (*See* Doc. 25 at 8; Doc. 22 at 10.) W-Limited contends that the law of the Fourth Circuit, not the Federal Circuit, applies to personal jurisdiction in connection with the copyright and unfair trade practices claims. (*See* Doc. 25 at 8.) While this may be correct, it is irrelevant, because the complaint cannot plausibly be read to assert copyright and unfair trade practices claims against W-Limited. *Cf. Sterne*, 2005 WL 2563179, at *2 (holding in the Rule 12(b)(6) context that blanket conclusory allegations as to multiple defendants are insufficient).

The complaint often does not distinguish between and among the various defendants, lumping them all together as "Willowood." (*E.g.*, Doc. 1 at ¶ 78.) The exhibits attached to the complaint, however, show that the actions in the copyright and

---

[6] Regional circuit law would apply to "procedural matters that are not unique to patent law." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). Federal Circuit law controls the question of personal jurisdiction, because "the jurisdictional issue is intimately involved with the substance of the patent laws." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (quotation omitted). "Where a suit involves both patent and non-patent claims, Federal Circuit law regarding due process also applies to the question of personal jurisdiction on non-patent claims if the resolution of the patent infringement issue will be a significant factor in determining liability under the non-patent claims." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) (quotation omitted).

unfair trade practice claims are attributable only to W-USA and its subsidiaries, and not to W-Limited.

Counts V and VI allege copyright infringement based on two fungicide product labels. (*Id.* at ¶¶ 78-88, 114, 124.) According to Syngenta's exhibits to the complaint, the labels were sent to the EPA on behalf of Willowood, LLC, (*see* Doc. 1-16), and refer to W-USA and Willowood, LLC, only. (*See* Docs. 1-25 to 1-27.) Nothing in the complaint indicates that W-Limited had a specific role in registering these labels. (*See* Doc. 1 at ¶¶ 10-11; *see generally* Doc. 1 at ¶¶ 20-135, referring only to "Willowood," not "Willowood Limited.")

Count VII alleges unfair and deceptive trade practices based on false representations made to the EPA and early entry into the generic azoxystrobin market. (Doc. 1 at ¶¶ 130-134.) Again, Syngenta's exhibits indicate that these representations to the EPA and sales within the United States were made by or on behalf of W-USA and its subsidiaries only. (*See* Doc. 1-16.) The complaint contains no specific allegations that W-Limited made representations to the EPA or sold products containing azoxystrobin within the United States. (*See generally* Doc. 1 at ¶¶ 20-135, referring only to "Willowood," not "Willowood Limited.")

Since Counts I to IV allege patent infringement based on alleged conduct that is attributable to W-Limited, the Court will follow Federal Circuit law in analyzing personal jurisdiction.

I. **Personal Jurisdiction**

7

An out-of-state defendant is subject to personal jurisdiction of a district court only if both the forum state's long-arm statute and due process are satisfied. *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008). "North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Therefore, the North Carolina long-arm statute limit merges into the due process question.

There are two different types of personal jurisdiction. *See, e.g.*, *Avocent*, 552 F.3d at 1330. Syngenta has not contended that the Court can exercise general jurisdiction over W-Limited, so the Court will limit its analysis to specific jurisdiction.

A court may assert specific jurisdiction over a foreign defendant when "the defendant has purposefully directed [its] activities at residents of the forum and the litigation [then] results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (quotations and citations omitted). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) (quoting *Burger King*, 471 U.S. at 475). To determine whether the contacts with the forum state were sufficient, a court looks to whether the defendant "should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quotation omitted).

8

Even after a plaintiff shows that a defendant purposefully directed activities at a forum, a court must consider "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quotation omitted). The factors to consider under fair play and substantial justice are "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive policies." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1417 (Fed. Cir. 2009) (quoting *Burger King*, 471 U.S. at 477).

Syngenta contends that purposefully directed activities can be shown using the stream-of-commerce theory. (Doc. 22 at 12-13.) As set forth in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, the stream-of-commerce theory allows a court in a patent case to exercise specific jurisdiction over an out-of-state actor who "purposefully shipped" the allegedly infringing item into the forum state "through an established distribution channel." 21 F.3d 1558, 1565 (Fed. Cir. 1994). Later case law created doubts about how to apply this doctrine. *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1381 (Fed. Cir. 2015) ("The precise requirements of the stream-of-commerce theory of jurisdiction remain unsettled."); *Prototype Prods., Inc. v. Reset, Inc.*, 844 F. Supp. 2d 691, 702 n.3 (E.D. Va. 2012) (summarizing stream-of-commerce plurality opinions).

At its most basic level, jurisdiction based on stream-of-commerce requires "the movement of goods from manufacturers through distributors to consumers," ending in the

forum state. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (plurality opinion). Syngenta has proven this basic requirement. It is undisputed that W-Limited sold azoxystrobin to a distributor, W-USA, who then used that azoxystrobin in fungicide products available for sale in North Carolina. (Doc. 16 at ¶¶ 6, 8, 10; Doc. 26 at ¶ 4.)

It is uncertain whether a plaintiff must also show that the defendant "targeted" a specific forum and had "an intention to benefit from and thus an intention to submit to the laws of the forum State," *Nicastro*, 131 S. Ct. at 2787-88, or whether only awareness plus some additional "act . . . purposefully directed toward the forum State" is required. *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 112 (1987) (O'Connor, J., writing for a plurality). The Federal Circuit's solution to this uncertainty has been to simply use the original *Beverly Hills Fan* test and disregard the later fractured Supreme Court decisions. *See AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363-64 (Fed. Cir. 2012) (per curiam).

By any of these standards, Syngenta has not made a prima facie showing of specific jurisdiction as to North Carolina. Syngenta alleges that, because W-Limited "intentionally established a distribution channel" to sell the infringing azoxystrobin in the United States, it has purposefully directed its activities toward North Carolina. (Doc. 22 at 15.) However, W-Limited's website makes no mention of North Carolina, and W-Limited has no physical or business presence in North Carolina. *Supra* pp. 3-5. There is no evidence or specific allegation that W-Limited's management directed W-USA to make sales in North Carolina. (*See* Doc. 27 at ¶ 5.) Only W-USA and Willowood, LLC,

10

have registered azoxystrobin products in North Carolina and made those products available for sale in the state. *See supra* pp. 5-6. Nor is there any showing that the acts of W-USA can be imputed to W-Limited. W-Limited has neither targeted nor purposefully directed any act at North Carolina, and so specific jurisdiction is inappropriate as to North Carolina.

## II.     Rule 4(k)(2)

Alternatively, Syngenta contends that personal jurisdiction is available under Rule 4(k)(2). (Doc. 22 at 21-23); Fed. R. Civ. P. 4(k)(2). In appropriate circumstances, an out-of-state defendant that lacks sufficient contacts to a particular forum state can still be subject to personal jurisdiction in that state based on contacts with the United States as a whole. Rule 4(k)(2), which acts as a "federal long-arm statute," authorizes personal jurisdiction over a defendant if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal jurisdiction in the courts of any state, and (3) the exercise of jurisdiction satisfies due process requirements." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012) (citation omitted); Fed. R. Civ. P. 4(k)(2). For due process analysis under Rule 4(k)(2), the relevant forum state is the United States as a whole. *Merial*, 681 F.3d at 1294.

**Claim arises under federal law.** The first requirement is "relatively straightforward" in a patent case. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1294 (Fed. Cir. 2009). Because Syngenta's patent claims arise under federal laws, (*see* Doc. 1 at ¶ 7), and W-Limited does not disagree, (*see* Doc. 25 at 10), this requirement is satisfied.

11

**Negation requirement.** The second requirement under Rule 4(k)(2) is that the defendant must not be subject to personal jurisdiction in any individual state. *Merial*, 681 F.3d at 1294. This requirement is satisfied "if the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible." *Id.* at 1294 (quotation omitted). Specifically, the burden is on the defendant to "identify[] . . . a forum where jurisdiction would have been proper at the time of filing, regardless of consent." *Id.*

Here, W-Limited has not identified another forum where suit is possible. While W-Limited identified Oregon as a potential alternate forum state, W-Limited has not conceded that it is subject to personal jurisdiction there. W-Limited says only that personal jurisdiction "may" be available in Oregon. (Doc. 25 at 11.)

When a plaintiff directly asserts Rule 4(k)(2) jurisdiction, as Syngenta has done here, (*see* Doc. 22 at 21-23), this tepid response of "maybe" by a defendant is not enough. In *Merial*, the defendant consented to jurisdiction in another state while litigation was pending, and the Federal Circuit held this "*ex post* consent" was insufficient because jurisdiction in the new state would not have been proper at the time of filing. 681 F.3d at 1294. Here, W-Limited did not even fully concede jurisdiction. A defendant who seeks to avoid Rule 4(k)(2) by alluding to jurisdiction in another state, but not fully conceding jurisdiction there, is "playing jurisdictional hide-the-ball" and should not benefit. *See Snap−On Inc. v. Robert Bosch, LLC*, No. 09 C 6914, 2013 WL 5423844, at *6 (N.D. Ill. Sept. 26, 2013). Because W-Limited has not affirmatively identified a state where personal jurisdiction is appropriate, and because W-Limited's own evidence shows that it

12

has not purposely directed acts towards any state, (Doc. 15 at ¶ 3), the negation requirement means the exercise of jurisdiction via Rule 4(k)(2) is appropriate.[7]

**Due process as to United States as a whole.** The third requirement asks whether the extension of personal jurisdiction to this defendant is compatible with due process. This uses the same test for personal jurisdiction described *supra* pp. 8-10, except it "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *See Synthes*, 563 F.3d at 1295.

For specific jurisdiction under Rule 4(k)(2), Syngenta must show three things: that W-Limited has "purposefully directed [its] activities at residents of the forum," that the claim "results from alleged injuries that arise out of or relate to those activities," and that "the assertion of personal jurisdiction would comport with fair play and substantial justice." *Avocent*, 552 F.3d at 1330-31 (quotations omitted).

Here, taking all inferences in favor of the plaintiff, *see New Wellington*, 416 F.3d at 294, Syngenta has shown such purposefully directed activities. W-Limited created an affiliated company in the United States for the purpose of broadening its sales to the

---

[7] In any event, it does not appear that specific jurisdiction is available in Oregon. W-Limited suggests that jurisdiction in Oregon might be appropriate because, under Federal Circuit law, the sale of azoxystrobin took place in the location of the buyer. (Doc. 25 at 10, citing Syngenta's brief, Doc. 22 at 18.) Here, the buyer, W-USA, is located in Oregon. (Doc. 16 at ¶ 3.) While the location of these sales might show some purposeful activities directed at Oregon, considerations of fair play and substantial justice might still guide against Oregon exercising personal jurisdiction. *See Burger King*, 471 U.S. at 476.

W-Limited also states that "Willowood USA has sold approximately ten times more azoxystrobin in Oregon than in North Carolina." (Doc. 25 at 10; Doc. 26 at ¶ 4.) This conduct of W-USA is irrelevant for personal jurisdiction as to W-Limited. W-Limited's management did not know where W-USA's products were sold in the United States, (Doc. 27 at ¶ 5), and W-USA's conduct is not attributable to W-Limited, as the Court has held *supra* pp. 6-7.

United States.[8]  *See supra* pp. 3-5.  This affiliation with W-USA was prominently displayed on W-Limited's website under the company's "News updates" heading.  (*See* Docs. 22-1, 22-2.)  W-Limited described that affiliation as "its US business" and "for . . . business opportunities in the U.S.," which shows a continuing intent to target the United States.  (Doc. 22-1.)  By posting W-USA's contact information and links on its website, W-Limited sought to channel business opportunities in the United States to W-USA.  (*See* Docs. 22-8, 22-9.)  Mr. Mundhra's declaration establishes that W-Limited's management was aware that the azoxystrobin it sold to W-USA would later be sold in the United States, (*see* Doc. 27 at ¶¶ 4-6), and W-USA did actually sell azoxystrobin products to the United States market.  (Doc. 26 at ¶ 4; *see* Docs. 22-4 to 22-7.)

These facts establish purposefully directed activities, regardless of the standard used.  W-Limited "targeted" the United States under *Nicastro*.  *See* 131 S. Ct. at 2787-88.  It conducted an "act . . . purposefully directed toward" the United States under *Asahi*.  *See* 480 U.S. at 112.  It sent azoxystrobin "through an established distribution channel" to the forum state under *Beverly Hills Fan*.  *See* 21 F.3d at 1565.  Because W-Limited established and used W-USA specifically as a distributor for sales to the United States market, and because it publicly announced and maintained that connection, it has purposefully directed activities at the United States sufficient for specific jurisdiction.

---

[8] W-Limited's statement in the 2010 news release, (Doc. 22-3 at 5), is an admission that shows W-USA was a wholly owned subsidiary at the time it was formed.  Even if this is not so, it is undisputed that the defendants are affiliated and the Court's decision rests, *inter alia*, on that affiliation, not on the parent-subsidiary relationship.

14

Syngenta's claims also arise out of or are related to those activities. As discussed *supra*, the claims attributable to W-Limited are the patent claims described in Counts I to IV of the complaint. *See supra* pp. 6-7. Those claims allege "selling" and "importing" infringing products and inducing others to do the same. (Doc. 1 at ¶¶ 90-91, 95-96, 100, 105.) The purposeful activities of W-Limited towards the United States resulted in the creation of an affiliate, W-USA. That affiliate imported and sold the allegedly infringing azoxystrobin products in the United States. (Doc. 16 at ¶¶ 8, 10.)

In considering whether "fair play and substantial justice" support jurisdiction, the Court considers "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive policies." *Touchcom*, 574 F.3d at 1417 (quotation omitted).

Defending a case in the United States will be a burden on W-Limited, which is halfway around the world. Nonetheless, "progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome," *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 294 (1980) (quotation omitted), and that progress is even more evident today than when *World-Wide* was decided. Documents can be sent electronically, depositions can be taken by videoconferencing, and communication is less expensive and virtually instantaneous with email, texts, and modern phones. Syngenta, the alleged injured party, is based in the United States and the alleged injury is here. The courts of this country have "a substantial interest in enforcing

15

the federal patent laws." *Synthes*, 563 F.3d at 1299 (quotation omitted).  No one has identified another forum for Syngenta to enforce its rights or any reason this Court cannot efficiently determine the issues.  Finally, the United States has a strong interest in preventing a foreign entity from evading patent laws and prematurely exploiting a patent-holder's rights, as alleged here.  *See id.* at 1299-300.

W-Limited chose to direct the allegedly infringing product to the United States market by selling to an affiliate formed explicitly for that purpose.  Thus, W-Limited purposefully directed its activities to citizens in the United States.  No individual state would have personal jurisdiction over W-Limited for these patent claims, and the exercise of personal jurisdiction over W-Limited for patent infringement arising out of the sale of those products is fair and in the interest of justice.  Jurisdiction is appropriate under Rule 4(k)(2).

## CONCLUSION

Syngenta has not established that Willowood Limited has the minimum contacts with North Carolina necessary for this Court to exercise personal jurisdiction.  However, Syngenta has shown that personal jurisdiction is appropriate under Federal Rule of Civil Procedure 4(k)(2).  The motion to dismiss will be denied.

It is **ORDERED** that the motion to dismiss, (Doc. 13), is **DENIED**.

This the 14th day of October, 2015.

_____
UNITED STATES DISTRICT JUDGE

16

Case 1:15-cv-00274-CCE-JEP   Document 32   Filed 10/14/15   Page 16 of 16