IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SYNGENTA CROP PROTECTION, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:15-CV-274 |
| WILLOWOOD, LLC, WILLOWOOD USA, LLC, WILLOWOOD AZOXYSTROBIN, LLC and WILLOWOOD LIMITED, | ) ) ) ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Catherine C. Eagles, District Judge.

In 2015, Syngenta sued Willowood, seeking millions of dollars in lost profits as a result of alleged patent infringement. The case was tried to a jury in September 2017. Syngenta now seeks to seal certain trial exhibits and related portions of the trial transcript that contain confidential business information. The public interest in open trials is extraordinarily high. Open courts promote the integrity of the judiciary, increase public understanding of the court system, and assure the public that proceedings and the resulting verdicts are fair, impartial and non-arbitrary. Secret trials and verdicts based on secret evidence kindle suspicions of corruption, unfairness, and conspiracies. Public access should rarely be restricted when the information sought to be sealed is important to understanding what happened at trial

As to some of the exhibits and testimony, the information that Syngenta seeks to seal is crucial to understanding the trial, and Syngenta has not established that its private interest outweighs the public interest in open courts. As to these materials, the motion will be denied.

As to other materials, Syngenta primarily seeks to seal confidential information that was never mentioned during the trial but is in evidence because it was part of an exhibit containing relevant information and Syngenta does not seek to seal the relevant portions of the exhibit or accompanying testimony. The public interest in access to such information is small and disclosure of Syngenta's confidential information would harm its competitive standing. As to these materials, non-disclosure will not interfere with public understanding and oversight and the motion will be granted.

## BACKGROUND

## I.     OVERVIEW OF THE CASE

In 2015, Syngenta sued Willowood[1] for patent infringement, seeking millions of dollars in lost profits on its fungicides containing azoxystrobin. There were four patents at issue: the compound patents (the '076 Patent and the '256 Patent) both claim a group of chemical compounds that includes azoxystrobin, and the process patents (the '138 Patent and the '761 Patent) both claim methods of manufacturing azoxystrobin. *See, e.g.*,

---

[1] There are four Willowood defendants: Willowood, LLC; Willowood USA, LLC; Willowood Azoxystrobin, LLC; and Willowood Limited. Where issues are specific to an individual defendant, the entity's full name will be used. Otherwise, the Court will use the word "Willowood" for simplicity.

Doc. 1 at ¶ 21; PTX 1-4. The compound patents and the '138 Patent expired before trial, and the '761 Patent expires in 2029. *See* PTX 1, 2, 3 and 4; 35 U.S.C. § 154. Syngenta asserted that the infringement began in 2013 and, as to the '761 Patent, was continuing.

The Court granted summary judgment in favor of Syngenta as to validity and infringement of the compound patents by certain Willowood defendants. Doc. 141. The remaining issues were tried to a jury in September 2017. The jury found that: Willowood Limited did not infringe the compound patents; Willowood did not infringe the '138 Patent; the '761 Patent was valid and Willowood infringed it; Syngenta proved that it was entitled to $75,600 in damages for Willowood's infringement of the compound patents; Syngenta proved that it was entitled to $900,000 in damages for Willowood's infringement of the '761 Patent; and Willowood's infringement of the compound patents was not willful. Doc. 319.

After trial, Syngenta filed the pending motion, seeking to seal twelve exhibits in full and to redact information from an additional thirteen exhibits. *See* Doc. 331 at 12, 14, 16-18. Syngenta also seeks to redact information from the publicly available trial transcript that, for the most part, discloses information in the exhibits. *Id.* at 13, 15, 17.[2]

## II.     STANDARD FOR SEALING TRIAL TESTIMONY AND EXHIBITS

Because the public has a right to attend trials and oversee the courts, the First Amendment protects the public's right to access the trial testimony and exhibits that

---

[2] Shortly before trial, Syngenta filed a much broader motion to seal, covering more trial exhibits and seeking to close the courtroom during testimony related to those exhibits. *See* Doc.

Syngenta is moving to seal.  *See, e.g.*, *In re Application of U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290-91 (4th Cir. 2013); *Am. Civil Liberties Union v. Holder*, 673 F.3d 245, 252 (4th Cir. 2011) (collecting cases).[3]  The Court therefore evaluates Syngenta's motion under the First Amendment public right to access standard.[4]

The public interest in open courts at this stage of the proceedings—a civil trial—is almost at its peak, exceeded only by the public interest in a criminal trial.  "A trial is a public event.  What transpires in the court room is public property."  *Craig v. Harney*, 331 U.S. 367, 374 (1947).  Openness advances the civil adjudication process by increasing public understanding of the court system and by assuring the public that proceedings and the resulting verdicts are fair, impartial, and non-arbitrary.  *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571-72 (1980); *Doe v. Pub. Citizen*, 749 F.3d 246, 263, 267 (4th Cir. 2014).  Open trials also promote the institutional integrity of the judiciary, *Pub. Citizen*, 749 F.3d at 263, 267, by encouraging a sense of

---

287.  In the pending motion, Syngenta has significantly narrowed its motion to seal.  Doc. 330. Syngenta's prior motion to seal, Doc. 287, is therefore moot and will be denied.

[3] This case has had many requests to seal exhibits submitted in connection with various motions.  The Court has covered the rules relevant to such requests several times, which it will not repeat in detail here.  *See, e.g.*, Doc. 171.

[4] The Court does not find persuasive Syngenta's argument that those portions of exhibits that were not specifically displayed to the jury or presented in trial testimony are not subject to the same public right of access as judicial records.  *See* Doc. 331 at 18.  The exhibits were provided to the jury in full.  Therefore, the First Amendment right of access applies.  As discussed *infra*, the public interests at issue may, however, be lower and subject to less weight for those materials not discussed during testimony.

public responsibility by judges and jurors, *see Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884), and by discouraging arbitrary decision-making. *See In re Oliver*, 333 U.S. 257, 270-71 (1948).

While "the operation of the court system is a matter of utmost public concern," *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 574 (4th Cir. 2004),[5] the public's right of access to trials and trial exhibits is neither absolute nor unlimited. *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 598 (1978). Rather, it "must be balanced against other compelling interests." *In re Knight Pub. Co.*, 743 F.2d 231, 234 (4th Cir. 1984). Restrictions on the public's right of access may be appropriate when access to judicial records could provide a "source of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598; *see also Woven Elecs. Corp. v. Advance Grp., Inc.*, Nos. 89-1580, 89-1588, 1991 WL 54118, at *6 (4th Cir. Apr. 15, 1991). "A corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records." *Pub. Citizen*, 749 F.3d at 269; *see also Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1218, 1228-29 (Fed. Cir. 2013) (applying Ninth Circuit law and sealing narrow selection of records submitted in a patent case in connection with a non-dispositive pretrial motion and a post-trial motion for injunctive relief and enhanced

---

[5] The Court has omitted internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

damages where records contained product-specific financial information and other information that, if public, would cause competitive harm).

Even under the less stringent common law right of access, the litigant seeking to restrict access must show that its interest protected by sealing "heavily outweigh[s] the public interests in access" to court proceedings before a district court may restrict or limit public access. *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). When the First Amendment right of access applies, the litigant must also present "specific reasons" that "justify restricting access to the information"; conclusory assertions are not sufficient. *Lord Corp. v. S & B Tech. Prods., Inc.*, No. 5:09CV205D, 2012 WL 4056755, at *1 (E.D.N.C. Sept. 14, 2012); *see Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 15 (1986). Further, the requested restriction on public access must be narrowly tailored to serve the private interest. *See Va. Dep't of State Police*, 386 F.3d at 575; *accord Woven Elec.*, 1991 WL 54118, at *6 ("The district court should review the entire record of the trial, including the exhibits and transcripts if any, and seal only those portions necessary to prevent the disclosure of trade secrets.").

## ANALYSIS

The information Syngenta seeks to seal is confidential business information that falls into five general categories: financial information; supply agreements; corporate strategy documents; experiments related to the development of the '761 Patent; and testing protocols. In support of its motion, Syngenta has submitted a declaration by Andrew Fisher, Syngenta's Product Lead for azoxystrobin products. He has testified to the confidential nature of the trial exhibits that Syngenta is moving to seal, which he

asserts include confidential and trade secret information. *See* Doc. 332 at ¶¶ 3-13. Mr. Fisher also affirms that Syngenta's competitive standing will be harmed by the disclosure of this confidential information. *Id.*

The Court has complied with the First Amendment notice requirements set forth in *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988) and *Rushford*, 846 F.2d at 253-54. Syngenta filed a pretrial motion seeking similar relief on August 28, 2017, Doc. 287, and on August 30, 2017, the Court arranged for posting notice of that motion on the Middle District's website. Syngenta filed the post-trial motion on October 4, 2017. Doc. 330; *see Mears v. Atl. Se. Airlines, Inc.*, No. 5:12CV613F, 2014 WL 5018907, at *2 (E.D.N.C. Oct. 7, 2014) ("The filing of a litigant's motion to seal . . . is sufficient to provide public notice and opportunity to challenge the request to seal."). On October 10, 2017, Willowood responded to the motion, but did not object to it. *See* Doc. 335. No one else has challenged either motion or otherwise asked to be heard on them.[6]

In order to determine whether Syngenta's motion should be granted, the Court evaluates: whether Syngenta has shown that the information sought to be sealed is confidential; whether disclosure would harm Syngenta's competitive standing or otherwise harm its business interests; whether the motion is narrowly tailored; and whether the interests in non-disclosure are compelling and heavily outweigh the public's interest in access to the information. In weighing the competing interests, the Court

---

[6] When the case was called for trial on September 5, 2017, the Court inquired whether anyone was present to speak to Syngenta's pretrial motion to seal exhibits and close the courtroom. No one objected or asked to be heard at that time. 9/5/17 Tr. at 161-66. The public notice of Syngenta's motion remained on the Middle District homepage for over two months.

considers, among other things, whether access to the evidence is needed to understand what happened at trial and the degree of harm that disclosure would be likely to cause.

## I.  FINANCIAL INFORMATION, SUPPLY AGREEMENTS, AND CORPORATE STRATEGY DOCUMENTS

At trial, Syngenta sought approximately $75 million in damages for lost profits it asserted were caused by Willowood's infringement of the compound patents and alleged infringement of the process patents.  Willowood contended that Syngenta's lost profits damages were speculative and that Syngenta was limited to reasonable royalty damages. Willowood's expert, John Jarosz, calculated Syngenta's damages at $900,000 for the '761 Patent.  9/12/17 Tr. at 21.  Ultimately, the jury awarded damages in the amount calculated by Mr. Jarosz.  Doc. 319.

Specifically, Syngenta contended that Willowood's infringing sales caused it to lose sales and forced it to reduce prices to compete with Willowood, thus reducing its profits.  Syngenta presented testimony from its employees involved in selling and marketing azoxystrobin fungicides about the effect Willowood's entry into the market had on its prices and sales.  9/6/17 Tr. at 86-204 and 9/7/17 Tr. at 9-200 (testimony of Mr. Cecil and Mr. Fisher).  It also presented testimony from an expert, Dr. Benjamin Wilner, who offered an opinion on Syngenta's lost profits for each relevant calendar year and patent.  9/8/17 Tr. at 37-172.  Dr. Wilner calculated Syngenta's lost profits using actual sales as compared to budgeted (or estimated) sales for azoxystrobin fungicides,

adjusted to the same extent an allegedly similar product, mesotrione, met its budget projections.[7]

Willowood contended that its infringement, if any, did not cause Syngenta's lost sales and price reductions because Willowood had a small part of the market and there were other competitors selling azoxystrobin fungicides. *See, e.g.*, 9/8/18 Tr. at 103-04. Willowood also challenged Dr. Wilner's testimony as, *inter alia*, relying on inaccurate budgets, failing to consider particular aspects of the budget process, and selecting an inappropriate product as a benchmark. *See id.* at 92-171 (cross examination of Dr. Wilner).

As part of resolving the dispute over Syngenta's damages, both parties presented evidence about Syngenta's gross sales of azoxystrobin fungicides and its pricing of those fungicides before and after Willowood entered the market. Both Syngenta and Willowood offered numerous exhibits and questioned witnesses about detailed sales

_____

[7] For most of his calculations, Dr. Wilner used two benchmarks to assist him in developing an opinion as to what Syngenta's gross profits would have been for azoxystrobin products in a hypothetical market unaffected by Willowood's alleged infringement. *See* 9/8/17 Tr. at 53 (Dr. Wilner). He began with the first benchmark: Syngenta's budgeted gross profits for azoxystrobin. He then adjusted that figure using the budgeted gross profits and actual performance of the second benchmark, mesotrione, an herbicide made by Syngenta. *See id.* at 59, 76. Using these benchmarks, he reached an opinion as to what Syngenta's profits would have been in a hypothetical non-infringing world. *See generally Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003) (discussing the benchmark methodology for calculating gross profits and lost profits). According to Dr. Wilner, this method results in a lost profits figure that takes into account both lost sales and price erosion. *See* 9/8/17 Tr. at 52-53, 96-97; *see generally Syngenta Crop Prot., LLC v. Willowood Azoxystrobin, LLC, et al.*, No. 1:15CV274, 2017 WL 3088383, at *1 (M.D.N.C. July 20, 2017) (ruling on Willowood's motion to exclude Dr. Wilner's testimony). While some understanding of Dr. Wilner's method is necessary for context, it is not necessary to go into minute detail. Therefore, the Court's explanation is a summary and is somewhat oversimplified.

figures and pricing information for both mesotrione and azoxystrobin, as well as details about Syngenta's budget process and marketing strategies. Syngenta seeks to seal in whole or in part a number of these trial exhibits, and it also seeks to redact some pricing and sales numbers disclosed in trial testimony.

### A. Financial Information

Syngenta seeks to seal in full five trial exhibits (PTX 110.a, 123.a, 140.a, 148.a, and DTX 252) that contain detailed information on the budgeted and actual sales quantity, gross profits, discounts, net price, cost of goods sold, and gross prices for azoxystrobin and mesotrione products. Syngenta relied on these exhibits to support its contention that its budgeting process was thorough and reliable and that use of budgeted profits was an appropriate benchmark for the lost profits calculations. *See* 9/6/17 Tr. at 117-27, 139-40 (testimony of Mr. Cecil); 9/7/17 Tr. at 142-52 (Mr. Fisher). Willowood used one exhibit, DTX 252, which compared budgeted and actual figures, to show that the budget projections were not good predictors of actual sales. 9/6/17 Tr. at 166-72 (testimony of Mr. Cecil).

Syngenta also seeks to redact witness testimony that quotes the sales and pricing numbers from the exhibits. These numbers present: budgeted and actual azoxystrobin figures for 2009 through 2013, Doc. 333-9 at 3-4, Doc. 333-11 at 3-4, 6; budgeted and actual mesotrione sales for 2014, Doc. 333-9 at 4-5; Syngenta's herbicide sales from 2013 to 2015, Doc. 333-10 at 3; azoxystrobin product prices in 2013 and 2014, Doc. 333-10 at 5-6; and estimated sales, absent infringement, of azoxystrobin in 2015. Doc. 333-11 at 5; Doc. 333-12 at 3.

Syngenta's request is narrowly tailored. It does not seek to seal all the testimony about the exhibits, only specific sales and pricing figures.[8] The financial information presented in these exhibits and the sales and pricing data disclosed in the testimony is kept confidential by Syngenta and Mr. Fisher testified that public disclosure would give competitors an advantage. *See* Doc. 332 at ¶¶ 5-6.

Weighing this evidence, the Court determines that Syngenta has not shown a compelling interest in sealing the testimony sufficient to outweigh the public interest. The sales and pricing figures disclosed in the testimony are important to the public's understanding of the case because, as explained *supra*, actual and budgeted azoxystrobin and mesotrione sales were used in Syngenta's calculation of lost profit damages, and the accuracy of the budget numbers was challenged by Willowood.

For example, on cross examination, Syngenta's witnesses acknowledged that the budgeted sales of azoxystrobin in 2009 were $249,812,000, but the actual sales were $151,966,000—a $98 million difference. *See* 9/6/17 Tr. at 167 (testimony of Mr. Cecil). Without the specific numbers, the testimony is difficult to follow. Moreover, it is obvious that if the numbers are not available, one cannot understand how and why the numbers support or undermine the damages calculations. For these reasons, sealing the testimony would impede public understanding of the verdict. *See Columbus-Am.*

---

[8] Syngenta attached the relevant pages of the trial transcripts to the publicly available motion. As is apparent from those attachments, Syngenta has made very narrow requests to seal and does not seek to seal entire sentences or paragraphs where the numbers are disclosed. Rather Syngenta seeks to redact and seal only the number itself. *See, e.g.*, Doc 333-9 at 3 ("So in 2009, Syngenta's budgeted sales for azoxystrobin was [redacted], correct?").

*Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000) (noting that "it is

hardly possible" for the public "to come to a reasonable conclusion" about the result

"without knowing the facts of the case."); *see Publicker Indus., Inc. v. Cohen*, 733 F.2d

1059, 1070 (3d Cir. 1984) (discussing the way "acting under the public gaze" during

court proceedings protects the public's interest).  Mr. Fisher did not identify any specific

harm arising from disclosure of these specific numbers, *see* Doc. 332, and it is unlikely

that their disclosure would put Syngenta at much of a competitive disadvantage; the

numbers discussed in the testimony are limited and the sales and pricing numbers are old.

Weighing the public interest in open access against Syngenta's interest in keeping

confidential the sales and pricing figures disclosed during the testimony, the Court

concludes that the public's interest is higher.

 As to the exhibits, however, the weighing process leads to a different result.  The

exhibits contain financial details that were not referenced during testimony or by counsel

during opening statements or closing arguments,[9] and disclosure of this detailed

information will not further the public's understanding of the case.  Mr. Fisher was

specific about the harm that would arise from disclosure, Doc. 332 at ¶¶ 5-6, and the risk

of harm is enhanced if the exhibits are viewed in connection with the trial testimony, as

Syngenta witnesses explained how the information is gathered, developed, and used in

the ordinary course of business to make decisions about how much product to make,

---

[9] For example, PTX 110.a breaks down azoxystrobin and mesotrione products by brand, with at least ten categories for each brand, and provides historical numbers for each brand and each category for 2012 and 2013, with 2014 budget projections for each.

pricing points, and other competitive matters. *See, e.g.*, 9/6/17 Tr. at 116-27 (Mr. Cecil explaining budgeting process); 9/7/17 Tr. at 142-52 (Mr. Fisher explaining meaning of line items in financial documents and describing line items for certain years). Sufficient sales and pricing numbers for azoxystrobin are disclosed in the trial transcript, thus allowing the public to understand the evidence and to evaluate the fairness of the proceedings and of the result, even without the exhibits in hand. The Court finds that Syngenta has demonstrated that its compelling interest in protecting its competitive standing heavily outweighs the public's right to access these trial exhibits. *See Doe*, 749 F.3d at 266.

The Court will grant the motion as to the financial trial exhibits, but not the related trial testimony.

### B. Supply Agreements

Syngenta seeks to seal in full three trial exhibits (PTX 259, 276 and 277) that consist of a supply agreement with Syngenta's customer, Loveland Products, Inc. and two amendments to that agreement. The agreement and amendments govern the purchase and sale of azoxystrobin millbase from 2011 through 2018. Syngenta also seeks to seal eight numbers from the trial testimony that reveal the specific prices and volumes at which Syngenta sold its products to Loveland. *See* Doc. 334-2 at 4, 7.

Syngenta keeps its supply agreements confidential and the terms of these agreements are not publicly known. Doc. 332 at ¶ 7. Mr. Fisher asserts that release of this information would harm Syngenta's competitive standing because disclosure of the "terms on which Syngenta supplies azoxystrobin . . . allow[s] [competitors] to compete

13

for Syngenta's customers' business." Doc. 332 at ¶ 7. He also asserts that disclosure of this information "could impact Syngenta's existing and future customer relationships." *Id.*

While disclosure of the supply agreement terms, such as volume and pricing, would cause some competitive disadvantage to Syngenta, Mr. Fisher did not explain why or how other information in the supply agreement would have competitive effects. Syngenta has not explained why disclosure of additional terms like warranties, indemnification, and payment would affect the customer relationship or competition. Thus the request is not narrowly tailored. Moreover, neither the agreement nor the amendments state a currently effective price, and it is not obvious why disclosure of old pricing terms would result in a significant competitive disadvantage. Nor is Mr. Fisher's conclusory statement that disclosure "could impact" customer relationships sufficient to establish a compelling need. *See Va. Dep't of State Police*, 386 F.3d at 575; *Press–Enterprise*, 478 U.S. at 15.

In contrast, the public's interest in this information is great. Syngenta presented these documents as evidence that it decreased its azoxystrobin price in 2015 in response to Willowood's early entry into the market, which allegedly came about as a result of its infringement. *See* 9/7/17 Tr. at 130-35, 198-99 (Mr. Fisher). This was a key issue for resolution by the jury. The public would find it difficult to follow the testimony and to

evaluate the jury's rejection of Syngenta's damages theory if the pricing numbers and pricing formula were redacted.

Weighing these interests, the Court finds that the public interest outweighs Syngenta's interest. As discussed, disclosure of the information would cause minimal harm to Syngenta's interest. Syngenta's interest in sealing the supply agreement documents does not outweigh the public's interest in open access to this information, which is key to understanding what happened at trial. Moreover, as to the exhibits, Syngenta's request is not narrowly tailored. The Court will deny the motion as to these trial exhibits and the related trial testimony.

### C. Corporate Strategy Documents

Syngenta seeks to redact thirteen trial exhibits to seal pricing and sales data as well as market strategies, business plans, product lifecycle management, and analysis of competition.[10] Generally speaking, these exhibits were multi-page internal Syngenta presentation materials used at meetings to set prices and budgets, establish business plans, and make other product decisions. *See, e.g.*, Doc. 332 at ¶¶ 8-13; Doc. 333-1 to 333-8. Syngenta has not requested redaction of the trial testimony that discusses these documents.

Through Mr. Fisher's affidavit, Syngenta has established that these materials are kept confidential. Doc. 332 at ¶¶ 8-13. His testimony also establishes that its

---

[10] These thirteen exhibits are PTX 225.a, DTX 68, 82, 86, 88, 92, 94, 99, 107, 108, 128, 160 and 211. The redacted versions are available in Exhibit E of Doc. 333. Doc. 333-1 to Doc. 333-8.

competitive standing would be harmed by disclosure of the information in these documents because a competitor could use the information to price and market competing products in a manner that places Syngenta at a competitive disadvantage. Doc. 332 at ¶¶ 8-13. Mr. Fisher also testified that one of the exhibits contains information Syngenta bought from a third party and as to which it has a contractual duty to keep confidential. *Id.* at ¶ 8 (DTX 86).

At trial, Willowood questioned Syngenta's witnesses about limited and very specific information in these exhibits to undermine factual assertions driving Syngenta's lost profits claim. Specifically, these exhibits identified other generic and brand competitors for azoxystrobin products and supported Willowood's argument that sales by Willowood were not the only cause of Syngenta's decision to lower its azoxystrobin prices. *See* 9/6/17 Tr. at 188-97 (DTX 68), at 198-209 (DTX 82); 9/7/17 Tr. at 11-13 (DTX 211), at 15-28 (DTX 88), at 28-38 (DTX 108), at 42-47 (DTX 92), at 52-56, 112-14 (DTX 68), at 9-11, 74-76 (DTX 99), at 176-184 (DTX 107); 9/8/17 Tr. at 150-52 (DTX128). Willowood also used the documents to highlight differences in the azoxystrobin and mesotrione markets, which supported its arguments that mesotrione was not an appropriate benchmark product for Dr. Wilner's lost profits analysis. *See* 9/7/17 Tr. at 15-28 (DTX 88), at 40-42 (DTX 86), at 42-46 (DTX 92), at 48-50 (DTX 160), at 50-51 (DTX 94); 9/8/17 Tr. at 11-14 (DTX 92).[11]

---

[11] Syngenta also referred to these exhibits during redirect. *E.g.*, 9/7/17 Tr. at 52-55 (DTX 68); at 56-60 (DTX 99). One of these exhibits, PTX 225a, was offered into evidence by Syngenta, but the only questions ever asked about it were authentication and foundational

As noted previously, Syngenta does not seek to seal any of the testimony about these exhibits. With three very small exceptions, it does not seek to seal the specific pages or paragraphs within these exhibits that witnesses discussed. For these exceptions, the relevant information from the pages Syngenta seeks to seal was fully disclosed during the testimony, *see* 9/7/17 Tr. at 22-23 (DTX 88), at 37-38 (DTX 108), at 40-42 (DTX 86), but the pages contain significantly more information than discussed during the trial, all of which is of a confidential and proprietary nature. Thus, Syngenta's request to redact these exhibits is narrowly tailored.

The public has little interest in having access to information in the many pages of these exhibits as to which there was no testimony and that do not appear to have any particular relevance to the case. For the few pages as to which there was testimony, the testimony about the relevant information in the exhibits will be publicly available. As to all of these exhibits, one does not need the redacted information in hand in order to understand the importance and meaning of the relevant information, which is clear from reading the testimony.

Weighing these interests, the Court determines that Syngenta has shown a compelling interest in sealing the requested excerpts of these trial exhibits, that its request to seal is narrowly tailored to protect that interest, and that its interest heavily outweighs the public's interest in open access. The additional benefit accruing to the public from making the entire exhibits available is small, especially as compared to Syngenta's

_____

questions. *Id.* at 106-07. No witnesses discussed the substance of PTX 225a nor was it mentioned during closing argument.

interest in keeping the non-relevant and non-public information on those pages confidential. As to these strategy exhibits, the motion to seal will be granted.

## II. EXPERIMENTS

The '761 Patent claims a process for making azoxystrobin technical that uses DABCO,[12] a catalyst, in a specified range. Doc. 1-11 at 2. Willowood presented testimony and evidence at trial in support of its claim that the '761 Patent was invalid because it was obvious in light of Weintritt, an earlier patent application. *See, e.g.*, 9/11/17 Tr. at 158-239 (Dr. Lipton). This evidence included DTX 35, a collection of Syngenta lab notebooks. Syngenta seeks to seal in full these lab notebooks, which contain experiments conducted to improve the azoxystrobin manufacturing processes. *See* Doc. 332 at ¶ 4.

Syngenta normally keeps lab notebooks confidential. Doc. 332 at ¶ 4. The information in the notebooks could be used to assist a competitor in improving its manufacturing processes, thus harming Syngenta's competitive standing. Doc. 332 at ¶ 4; 9/5/17 Tr. at 70-72, 94-96 (Dr. Whitton explaining the importance of the experiments in improving the manufacturing process).

Only a small and very specific piece of information in the notebooks was mentioned during the trial: a reference to the Weintritt patent. Willowood asked several Syngenta witnesses about this reference to support its contention that the use of DABCO within the claimed range was obvious. *See, e.g.,* 9/5/17 Tr. at 86-96. Syngenta does not

---

[12] DABCO stands for 1,4-diazabicyclo[2.2.2]octane. Doc. 1-11 at 3.

ask to seal or redact the transcript testimony where the Weintritt patent reference was read into the record and discussed. Thus, its motion is narrowly tailored.

Weighing the interests, the Court determines that Syngenta has shown a compelling interest in sealing DTX 35, that its request to seal is narrowly tailored to protect that interest, and that its interest heavily outweighs the public's interest in open access. The validity of the '761 Patent was upheld at trial, Syngenta has a strong interest in preventing competitors from using its confidential information to develop non-infringing alternatives, and disclosure of the information gives rise to a potential for use of the confidential information by competitors. Taken together, these things show a strong likelihood of competitive harm to Syngenta.

On the other side of the scale, the information in the lab notebooks is largely irrelevant to the case, and the relevant information is available in the trial transcript. It is not necessary to have the notebooks in hand to understand the trial testimony or how the relevant information in the lab notebook fits into the overall case. Public access to the confidential details is not needed to protect the public's interest and confidence in fair proceedings and the integrity of the fact-finding process. *See Publicker Indus.,* 733 F.2d at 1070 (discussing the way "acting under the public gaze" during court proceedings protects public's interest). The motion will be granted as to DTX 35.

## III.    TESTING PROTOCOLS

At trial, Willowood presented evidence that its supplier did not use DABCO in making azoxystrobin and thus that Willowood did not infringe the '761 Patent which, as

discussed *supra*, claims a process for making azoxystrobin that uses DABCO.[13] Syngenta presented testimony from an expert witness, Dr. Fortunak, that internal Syngenta tests of a Willowood azoxystrobin fungicide showed the presence of DABCO. *See, e.g.,* 9/12/17 Tr. at 137-38. He identified four trial exhibits, PTX 6b-6d, with graphs showing those testing protocols and results.

Syngenta seeks to seal in full these four trial exhibits. It also seeks to redact from the publicly available transcript of Dr. Fortunak's testimony three numbers used in the testing protocol. *See* Doc. 333-12 at 4. Syngenta does not seek to seal Dr. Fortunak's testimony about the testing protocol in general. It seeks to seal only the exhibits and extremely limited parts of the trial transcript that disclose key numbers necessary to determine if DABCO is present. Thus, the request to seal is narrowly tailored.

Syngenta normally keeps this kind of testing information confidential. Doc. 332 at ¶ 3. If the testing protocols and numbers were made public, a competitor could use that information to "seek a work around" to Syngenta's infringement testing and "potentially allow[] them to infringe Syngenta's patents without consequence." *Id.* This would harm Syngenta's competitive interest.

Weighing the interests, the Court determines that Syngenta has shown a compelling interest in sealing PTX 6b-6d and that its interest outweighs the public's interest in open access. Syngenta has a strong interest in protecting the confidential information it uses to monitor potential infringement of and to protect its '761 Patent

---

[13] Before trial, the Court shifted the burden of proof to Willowood to show that it did not infringe the '761 Patent pursuant to 36 U.S.C. § 295. Doc. 141 at 16-24.

rights, which extend for many more years. Disclosure of the information gives rise to a potential for use of the confidential information by competitors. On the other side of the scale, the numbers and graphs are not needed to understand Dr. Fortunak's testimony in general, and thus the public's interest in access is relatively small at this point. Because an interested reader of the trial transcript can easily follow the general nature of the evidence without these exhibits in hand and without the specific numbers provided in the testimony that Syngenta seals to redact, public access to the confidential details is not needed to protect the public's interest and confidence in fair proceedings and the integrity of the fact-finding process. The motion will be granted as to these materials.

## IV.    CONCLUSION

The courts of this country have traditionally been open, and public trials protect many values crucial to public trust and confidence in the third branch of government. The public's right of access can be overcome only by a very strong showing by litigants seeking to keep secret the information used by judges and juries to decide cases. In this case, Syngenta has met that burden as to limited categories of confidential business information not particularly helpful to understanding the jury's decision and those documents will be maintained under seal, subject to further order of the Court. But as to the information required to understand the trial and its result, the motion will be denied.

For the reasons state, it is **ORDERED** that:

1. Syngenta's motion to seal, Doc. 330, is granted in part and denied in part as follows:

a. The motion to seal is **GRANTED** as to DTX 35 and 252, and PTX 6.b-d, 110.a, 123.a, 140.a, and 148.a. The Clerk shall maintain these documents under seal.

b. The motion to seal is **GRANTED** as to DTX 68, 82, 86, 88, 92, 94, 99, 107, 108, 128, 160 and 211 and PTX 225.a. The Clerk shall maintain these documents under seal and include in the public record the redacted version of these documents as provided in Exhibit E of Doc. 333.

c. The motion to seal is **DENIED** as to PTX 259, 276, and 277. The Clerk need not maintain these exhibits under seal.

d. The motion to seal is **GRANTED** as to the following trial testimony: 9/12/17 Tr. at 138-40. The Clerk shall maintain these lines from the trial transcript under seal and shall only make publicly available the redacted versions of these transcripts as provided in Exhibit I of Doc. 333.

e. The motion to seal is **DENIED** as to the following trial testimony: 9/6/17 Tr. at 167-175; 9/7/17 Tr. at 41, 133-35, 146-52 and 199; 9/8/17 Tr. at 70-76, 131-132, and 155; 9/12/17 Tr. at 33. The transcripts need not be filed under seal.

2. Syngenta's motion to seal, Doc. 287, is **DENIED** as moot.

This the 4th day of December, 2017.

UNITED STATES DISTRICT JUDGE